USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/29/20

**PARKER AND CARMODY, LLP**
ATTORNEYS AT LAW
850 THIRD AVENUE
14TH FLOOR
NEW YORK, N.Y. 10022

DANIEL S. PARKER
MICHAEL CARMODY
CHRISTINA S. COOPER

TELEPHONE: (212) 239-9777
FACSIMILE: (212) 239-9175
DParker@ParkerandCarmody.com

March 27, 2020

**By ECF**
Hon. Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: <u>United States v. Antonio Reyes</u>
20 Cr 127 (GHW)

I write on behalf of Antonio Reyes ("the defendant" or "Mr. Reyes") requesting that the Court issue an order, granting bail to Mr. Reyes, on the condition that he be released to the custody of his daughter, that he sign a bond co-signed by two suretors, and if necessary, that he be placed on home detention secured by electronic monitoring.

If this application is granted, Mr. Reyes would reside with his daughter, Cindy Reyes, at her home at 1712 Rolling Hills Drive, Tobyhanna, PA. In addition, Mr. Reyes' son, Antonio Jr., who also lives in Tobyhanna. Pennsylvania, would be willing to make sure that his father complies with the aforementioned bail request.

The basis for this bail application is the impact of the COVID-19 outbreak and Mr. Reyes's pre-existing and current medical condition which leaves him highly susceptible to catching the virus.

I have attempted to reach AUSA Sarah Krissoff and we have exchanged emails and voicemails over the past two days, but I do not know where the Government stands on this bail request. Given the urgency of this matter, I am filing this motion.

Mr. Reyes, age 53, has been detained since his arrest on February 18, 2020, when he was presented before the Hon. Barbara Moses and consented to detention without prejudice. He is charged by indictment with participating in a (b)(1)(B) heroin conspiracy that is alleged to have run from 2017 to 2019.

Mr. Reyes is a long-term heroin abuser and when he was presented, he requested and the Court ordered that he receive medical attention. I have since learned from speaking with his daughter, Cindy Reyes and his son, Antonio, that Mr. Reyes is also a long-term asthmatic and on more than one occasion in the past, he has suffered severe asthma attacks and was taken by ambulance to Lincoln Hospital in the Bronx. His most recent asthma attack about which his son is aware occurred approximately 13 months ago and his son, Antonio, called 911. At the time, the elder Mr. Reyes was living with his son on East 156th in the Melrose section of the Bronx. The younger Mr. Reyes has since re-located to Pennsylvania.

I am currently unable to speak with Mr. Reyes, visit Mr. Reyes, or obtain an immediate HIPAA release from Mr. Reyes (which would still not result in my ability to secure medical records in an immediate fashion).

I write now to respectfully request that Mr. Reyes be released from detention forthwith. As will be detailed below, significant and unanticipated changes compel a re-examination of this Court's previous detention order.

**1. Procedural History**

Following his presentment on February 18, 2020, and his detention on consent without prejudice, an initial pre-trial conference was held before Your Honor on February 25, 2020. At that time, the parties discussed, and the Court ordered, that discovery be produced and that a follow-up conference be set for June 18, 2020.

No bail application has previously been made on behalf of Mr. Reyes.

**2. The Novel Coronavirus and its Constitutional Ramifications**

There is little need to take up too much time with a long explanation of the coronavirus itself and the devastating impact that it has had thus far. Obviously, the Court is well aware of the current crisis and the fact that this scourge has now made its way into both the MDC and the MCC. The public, in general, and specifically, Mr. Reyes, is facing a serious and urgent public health crisis. Decisions that may have seemed reasonable a few weeks ago must be reexamined in light of the latest developments; not only because of their effects on individual defendants themselves, but on society as a whole.

The exponential rate of coronavirus infection is unparalleled. The first case of coronavirus in New York State was announced on March 1, 2020. Less than two weeks later, New York State reported 325 positive cases. As of this writing, the state has amassed over 33,000 confirmed cases and more than 350 deaths. The numbers of course keep growing and while we may wish this situation wasn't real, unfortunately, it is.

Naturally, prisons are petri dishes for contagious respiratory illnesses like the novel coronavirus. The MCC is a massive pre-trial detention facility housing approximately 700 people at any given time. Perhaps not unsurprisingly, the MCC has failed to meet even the most basic

recommendations of the CDC for preventing the spread of coronavirus. Maintaining six feet of distance from other inmates is all but impossible in a correctional facility where most individuals, including Mr. Reyes are double bunked in a single cell, sharing a toilet and sink with a cellmate and a common shower with at least sixteen other people. With commissary closed, increasingly rare bars of soap have become the currency of choice.

As the public health crisis rapidly evolves, so too has the judiciary's perspective on release. On March 12, 2020, Magistrate Judge Orenstein denied a remand application, holding that increasing the population of the Metropolitan Detention Center could present a "danger to the community" -- the staff and inmates inside the jail -- by potentially bringing the virus into the facility. United States v. Raihan, 20 Cr. 68 (BMC) (Mar. 12, 2020). On March 18, 2020, Chief Judge McMahon granted an application for bail based on compelling reasons related to the current health crisis. Defense counsel had argued that "[a] complete cessation of visits at this critical time of preparation would make it impossible to adequately prepare for trial…." United States v. Hudson, 19 Cr. 496 (CM) (Mar. 13, 2020) (five days earlier, the application had been denied). On March 19, 2020, Judge Nathan reversed her previous detention order "in light of . . .the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic." United States v. Stephens, 15 Cr. 95 (AJN) (Mar. 19, 2020). In so doing, Judge Nathan noted that "[a] comprehensive view of the danger the defendant poses to the community requires considering all factors," including COVID-19. Id. Similarly, on March 19, 2020, the threat of coronavirus led Judge Ramos to release a formerly detained individual on bail. See United States v. Santiago Ramos, 20 Cr. 04 (ER).

While the virus itself – and Mr. Reyes' particular vulnerability to getting it -- is arguably enough of a changed circumstance to consider release, the constitutional ramifications mandate it. Conditions of confinement at the MCC as a result of the coronavirus have all but eliminated Mr. Reyes's Sixth Amendment right to the effective assistance of counsel and his ability to meet with counsel and prepare for trial. On March 13, 2020 the Bureau of Prisons announced a 30-day suspension of all visits to all federal correctional facilities all but eliminating defense counsel's ability to meet with Mr. Reyes. In all likelihood, the lockdown will extend well beyond 30-days.[1] The Sixth Amendment right to counsel is the cornerstone of our adversarial system of criminal justice. "The right to consult with legal counsel about . . . going to trial, testifying at trial, locating trial witnesses, and other decisions confronting the detained suspect, whose innocence is presumed, is a right inextricably linked to the legitimacy of our criminal justice system." Federal Defenders of New York, Inc. v. Bureau of Prisons, Docket No. 19-1778 (2d. Cir. Mar. 20, 2020).

## 3. The Bail Reform Act

The Eighth Amendment to the Constitution states that "[e]xcessive bail shall not be required." U.S. Const. Amend. VIII. Consistent with this prohibition, the Bail Reform Act ("BRA") of 1984, codified in Title 18 United States Code Section 3142 directs that a "judicial officer shall order the pretrial release of a person . . . subject to the least restrictive condition or combination of conditions that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community . . ." 18 U.S.C. § 3142(c)(B). Under the BRA, "it is only a 'limited group of offenders' who should

---

[1] Even prior to this lockdown, the MCC was locked down for approximately one week as prison officials searched for a weapon and contraband.

5

be denied bail pending trial." United States v. Shakur, 817 F.2d 189, 195 (2d Cir.1987)(quoting S.Rep. No. 98-225, at 7 (1984).

In determining whether to release or detain a defendant pending trial, the BRA instructs the court to consider in this order:

a. release of the defendant on personal recognizance or unsecured appearance bond;

b. release of the defendant on conditions reasonably necessary to assure the appearance of the defendant as required and to assure the safety of any person and the community; or

c. pre-trial detention if the court finds that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of any person or the community.

In making its determination, the statute directs the court to consider, *inter alia*, (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence (2) the weight of the evidence (3) the history and characteristics of the defendant including family ties, length of residence in the community, community ties, criminal history, and record concerning appearance at court proceedings (4) whether, at the time of the offense, the person was on probation, parole or other release; and (5) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See 18 U.S.C. § 3142(g).

### 4. The Bail Act's Temporary Release Provision

The world is not a stationary place and neither are legal cases; facts, circumstances, and conditions are constantly in flux. Fortunately, the drafters of the Bail Reform Act recognized this reality. Thus, when an individual, like Antonio Reyes, is being held pursuant to a previously issued detention order, the Act "permit[s] the temporary release of the person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's

defense or for another compelling reason." 18 U.S.C. § 3142(i)(emphasis added). There is no greater necessity for the preparation of a "person's defense" than access to counsel and there is no more "compelling reason" than a person's physical health. Frankly, under the current circumstances, if 18 U.S.C. § 3142(i) doesn't apply here, there seems to be little reason for it to exist in the first place.

Indeed, Judge Nathan recognized that "the obstacles the current public health crisis poses to the preparation of the Defendant's defense constitute a compelling reason [to release the Defendant] under 18 U.S.C. § 3142(i)." United States v. Stephens, 15-CR-95 (AJN) (Mar. 19, 2020) (releasing the defendant concluding that in light of changed circumstances, Mr. Stephens does not pose a danger to the community). See also United States v. Perez, 19-CR-297 (PAE) (Mar. 19, 2020) (concluding "compelling reasons exist for temporary release of the defendant from custody during the current public health crisis").

Similarly, in United States v. Rodriguez, the Court held that with respect to an accused's need to consult with counsel, "Section 3142(i)(3) reaches above the minimum" standards set by the Sixth Amendment. 2014 WL 4094561, at *4 (W.D.N.Y. 2014) (Scott, M.J.). The subsection's plain text "mandates the removal of any impediment to 'private consultations' [between attorney and client] that are qualitatively and quantitatively 'reasonable.'" Id.; cf. Falcon v. U.S. Bureau of Prisons, 52 F.3d 137, 139 (7th Cir. 1995) ("Section 3142(i)(3) is designed to protect a defendant's Sixth Amendment right to counsel, and if that right is being infringed, [the court] has the statutory authority to protect [defendant's] access to counsel.").

Under current conditions, there is no way for Mr. Reyes to consult with counsel and prepare for trial. At the very least, his 6th amendment right to the effective assistance of counsel

is being violated. Under these circumstances, the Court should invoke the temporary release provisions of the Bail Reform Act and release Mr. Reyes pending trial.

**5. The Nature and Circumstances of the Offense**

Recognizing that all criminal cases involve serious allegations, it is all important to recognize that some cases are more serious than others -- and thus, the nature of the accusations is relevant to the Court's bail determination. Based on conversations with the Government and counsel's assessment of the evidence in this case, in essence, Mr. Reyes is accused of participating in a (b)(1)(B) heroin conspiracy. As best we can tell, he is alleged to have engaged in street level transactions.

To counsel's knowledge, there are no allegations that Mr. Reyes was involved in large-scale, multi-kilo transactions or that he was alleged to have been involved in any violence. Even *assuming arguendo* that he engaged in the conspiracy, it would seem to make sense that he was a petty hand-to-hand addict who engaged in street-level sales in order to support his addiction.

**6. Antonio Reyes' Ties to the Community Are Strong and Verifiable**

Counsel has spoken with both of his children. His son, Antonio works as a landscaper and lives in Tobyhanna, PA. His daughter, served in the United States Marines from 2008 to 2012 and was honorably discharged in 2012. She just moved to Pennsylvania where she lives with her two sons. If the Court were to grant this application, the defendant could live with his retired United States' Marine, daughter.

**7. The Proposed Bail Conditions**

For the reasons stated above, Mr. Reyes respectfully requests that he be temporary released pending trial on the following conditions:

- He be released forthwith, and if the Court believes it necessary, he be placed on home detention secured by electronic monitoring;

- He be required to sign a $50,000 personal recognizance bond along with two co-signers;

- His travel would be restricted to the Southern District of New York and Pennsylvania;

- The defendant shall surrender his passport if feasible and shall not make any new applications;

- He be placed on Strict Pre-trial supervision; and

- Any and all other conditions that the Court believes to be necessary and appropriate.

## CONCLUSION

Considering the significant changes described above, the Court should modify its previous detention order and release Antonio Reyes pursuant to the provisions of 18 U.S.C. § 3142(i).

Thank you for your immediate attention to, and consideration in, this matter.

Respectfully submitted,

/s/ Daniel S. Parker
Parker and Carmody, LLP
850 Third Avenue
14th Floor
New York, NY 10022
Tel. 212-566-6213

Cc: AUSA Sarah Krissoff (BY ECF and email)

David Patton, Attorney-in-Chief Federal Defenders (by email)

Application denied without prejudice. The Court declines to act on this application without the benefit of the position of the United States and Pre-trial services. The Court construes this as an application for a bail review hearing, which the Court anticipates that it will either refer to Part I or be able to conduct by teleconference or telephone pursuant to the provisions of the recently-passed Coronavirus Aid, Relief and Economic Security ("CARES") Act. The Court directs counsel for the United States and counsel for Defendant to confer and propose a date and time for a hearing, which the Court expects will take place promptly. Counsel for the United States is directed to coordinate with counsel for Defendant, and, if appropriate, the Federal Defenders Office, to make reasonable arrangements for defense counsel to consult with his client in advance of any hearing, consistent with the requirements of the CARES Act, and to solicit the position of Pre-Trial services with respect to this application. In the event that the Government and Pre-Trial services do not oppose this application, the parties are directed to submit a joint letter to that effect, explaining briefly the basis for the parties' positions, and to present the Court a proposed order to implement the agreed-upon release package.

SO ORDERED
March 29, 2020

_____
GREGORY H. WOODS
United States District Judge